## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANGEL DOREEN GARCIA,

       Plaintiff,

v.                                      No. 1:23-cv-0344 DLM

MARTIN O'MALLEY,[1]
Commissioner of the Social Security Administration,

       Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff Angel Doreen Garcia's Opposed Motion to Reverse or Remand. (Doc. 16.) Having considered the record, submissions of counsel, and relevant law, the Court DENIES Plaintiff's Motion

### I.    Procedural History

In September 2019, Garcia applied for supplemental security income (SSI) under Title XVI of the Social Security Act (SSA). (Administrative Record[2] (AR) at 214–16.) Garcia alleges a disability onset date of January 26, 2017. (*Id.* at 214.) Disability Determination Services (DDS) determined that Garcia was not disabled initially and on reconsideration. (*Id.* at 80–122.) Garcia requested a hearing with an Administrative Law Judge (ALJ). (*Id.* at 143–46.)

Both Garcia and a vocational expert (VE) testified during the *de novo* hearing on November 1, 2022. (*See id.* at 40–62.) ALJ Jennifer M. Fellabaum issued an unfavorable decision on

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit.

[2] Document 12 contains the sealed Administrative Record. (Docs. 12-2–8.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

November 16, 2022. (*Id.* at 18–32.) Garcia submitted a Request for Review of Hearing Decision/Order to the Appeals Council (*id.* at 211–13), which the Council denied on March 3, 2023 (*id.* at 1–7). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 416.920(a)(4)(i)–(iv); *see also* 20 C.F.R. § 416.909; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect her capacity to work and of what she "can still do despite h[er]" limitations. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given h[er] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation

omitted); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, the ALJ found that Garcia "has not engaged in substantial gainful activity since September 30, 2019, the application date." (AR at 20 (citing 20 C.F.R. § 416.971–76).)

At Step Two, the ALJ concluded that Garcia "has the following severe impairments: degenerative disc disease (DDD); bilateral knee osteoarthritis; anxiety; depression; somatic symptom disorder; intermittent explosive disorder; and dyslexia." (*Id.* (citing 20 C.F.R. § 416.920(c)).)

At Step Three, the ALJ found that Collins "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).)

At Step Four, the ALJ considered the evidence of record and found that Garcia:

> has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except [she] can occasionally balance, climb ramps and stairs, stoop, crouch, kneel and crawl; can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or hazardous machinery; cannot operate a motor vehicle for commercial purposes; noise level of the work environment should be moderate or less; and work should be performed indoors, but brief walking from building to building can be performed. [She] can perform simple, routine, repetitive tasks, with no fast-paced assembly line work; can make simple work decisions; can occasionally interact with co-workers, supervisors, and the general public. [She] can tolerate occasional changes in the work setting.

(*Id.* at 23–24.) The ALJ noted that Collins "has no past relevant work." (*Id.* at 31 (citing 20 C.F.R. § 416.965).) Based on her review of the record and the testimony of the VE, the ALJ ultimately determined that Collins "has not been under a disability, as defined in the Social Security Act,

since September 30, 2019, the date the application was filed." (*Id.* at 32 (citing 20 C.F.R. §

416.920(g)).)

## III.     Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the

correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See*

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds

for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court

may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v.*

*Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## IV.     Discussion

Garcia argues that remand is warranted for one[3] reason: "The ALJ's RFC determination

was not supported by substantial evidence due to his failure to properly evaluate the opinion of

consultative examiner John P. Owen, Ph.D." (Doc. 16 at 6.) For the reasons discussed below, the

Court denies Plaintiff's Motion and affirms the ALJ's decision.

### A.     The ALJ reasonably evaluated Garcia's mental workplace limitations.

In evaluating Garcia's mental workplace limitations, the ALJ considered the following

evidence: Garcia's subjective complaints; a July 13, 2020 behavioral health note; an August 17,

2020 examination with Dr. Kris Lichtle; an August 19, 2020 opinion from Dr. Mark McGaughey;

a September 27, 2021 examination with Dr. John P. Owens; and a September 28, 2021 opinion

from Dr. Rachel Morrisey. (Doc. 12-3 at 23–25, 28–31.) Garcia argues that the ALJ erred in

finding the marked limitations opined by Dr. Owens unpersuasive and in determining the

---

[3] As Defendant highlights, Garcia challenges only the ALJ's assessment of Dr. John P. Owens's opinion relating to
her mental workplace limitations. (*See* Doc. 20 at 4 n.1; *see also* Doc. 16 at 1 ("Issues Presented for Review" alleges
only error in the ALJ's assessment of Dr. Owens' determination).)

limitations "were unsupported and inconsistent with largely normal mental status examinations and indications of only mild cognitive limitations." (*Id.* at 7 (citing AR at 30).) Garcia argues the ALJ's reasoning failed to recognize the subjective nature of mental impairments or consider their impact on her work history. (*Id.*) The Commissioner argues that the ALJ reasonably evaluated the entire record, reconciling inconsistent evidence where necessary, and that her evaluation of Dr. Owens's reflected that approach. (Doc. 20 at 9–11.) The Court sides with the Commissioner.

Dr. John P. Owens conducted a psychological evaluation on September 22, 2021, pursuant to a referral for a mental status examination, including the administration of the Mini-Mental State Examination (MMSE). (AR at 486.) Relevant here, Dr. Owens opined that Garcia has moderate-to-marked limitations in carrying out instructions and adapting to changes in the workplace, and marked difficulty with persisting at tasks, using public transport, and interreacting with the public and coworkers. (AR at 488.) The ALJ, however, noted that Garcia's "mental status examinations have been largely within normal limits, with the exception of some anxiety and depression[,]" the MMSE score indicated only mild cognitive issues, and she was terminated from her last job for failing to obtain a CPR certification and "not as a result of limitations associated with her mental health condition." (AR at 30.) Accordingly, the ALJ found Dr. Owens's opinion not persuasive as to the marked limitations, but determined "moderate limitation[s are] supported both by this examination and by the overall record . . . ." (AR at 30.)

Garcia first argues that the ALJ erred in rejecting Dr. Owen's marked limitation opinions by "fail[ing] to recognize that mental impairments are inherently subjective and . . . necessarily rely on a patient's subjective reporting . . . ." (Doc. 16 at 7.) As the Commissioner responds, however, the ALJ did not reject the marked limitations because they relied too heavily on Garcia's subjective complaints. (Doc. 20 at 10.) Instead, the ALJ rejected them because they were

unsupported by the examination and the record. (*See* AR at 30.) In any event, the Commissioner correctly highlights that the ALJ *did* discuss Garcia's subjective complaints throughout her decision. (*See id.* at 21–30; *see*, *e.g.*, *id.* at 21 (summarizing Garcia's various statements on her medical conditions); 22–23 (comparing Garcia's reports of her mental impairments to the medical evidence and examinations); 24–30 (references to Garcia's subjective complaints throughout).)

Next, Garcia asserts that the ALJ engaged in impermissible cherry-picking of the evidence to support a denial of her claim. (Doc. 16 at 8.) Garcia cites *Bryant v. Commissioner, SSA*, 753 F. App'x 637 (10th Cir. 2018), but does not otherwise support her claim that the ALJ cherry-picked evidence. (*See* Doc. 16 at 8–9.) In *Bryant*, the Tenth Circuit held that the ALJ cherry-picked evidence by relying on portions of medical reports that supported a finding of non-disability and contradicted the examining physician's observations despite other portions of those exact same reports that confirmed the examining physician's conclusions. 753 F. App'x at 641.

Here, the ALJ did not cherry-pick evidence; rather, the ALJ properly "arrived at an assessment between two medical opinions without fully embracing either one." *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016). Dr. Owens opined that Garcia has moderate-to-marked limitations in carrying out instructions and adapting to changes in the workplace, and marked difficulty with persisting at tasks, using public transport, and interreacting with the public and coworkers. (AR at 488.) However, examinations and opinions from three other experts placed Garcia within normal limits except for some anxiety and depression, the MMSE score indicating only mild cognitive issues, and evidence that indicated she was terminated from her last position for reasons unrelated to her mental health impairments. (AR at 30–31.) Because the evidence did not reflect marked limitations in those areas, the ALJ determined that Dr. Owens's opinion supported only moderate limitations. (*Id.*) Accordingly, the ALJ did not arrive at her determination

by considering two opposing opinions; she arrived at her determination by considering one opinion that supported marked limitations and three others that supported moderate limitations at most. In other words, the majority of the evidence supports the ALJ's determination.

Looking more broadly at how the ALJ analyzed the examiners' physical or mental opinions, there is still no evidence of cherry-picking. The ALJ employed the same approach of considering other medical opinions and the evidence in the record in evaluating the opinions of every examiner. For example, in two instances, the ALJ determined the examiners' opinions were unpersuasive because the examinations and record supported *greater* limitations than they opined. The ALJ found the evaluation of Kris Lichtle, MA, PA to be only partially persuasive because Lichtle opined moderate limitations, but the ALJ highlighted that Garcia "does need other limitations due to forgetfulness." (AR at 30.) Similarly, the ALJ found Dr. Victor R. Salgado, MD's opinion of no limitations to be *entirely* unpersuasive because it was not supported by his own narrative and inconsistent with the other medical evidence of record demonstrating a range of physical impairments. (*Id.*) In other words, the ALJ's approach does not indicate she sought out evidence to support a predetermined conclusion and instead demonstrates she carefully considered whether each expert's opinion was supported by the exams and medical evidence in the record.

Again, the Court highlights that Garcia provides *no* argument in support of her claim that the ALJ cherry-picked evidence, let alone any explanation of how the analytic framework the ALJ applied to every examiner constitutes cherry-picking only as it relates to Dr. Owens's opinion. The Court also finds no indication the ALJ cherry-picked evidence in evaluating any of the examiners' opinions. Indeed, the ALJ made a determination as to the persuasiveness of each expert opinion using the same analytic framework, and the Court cannot discern a difference between how the ALJ analyzed Dr. Owen's opinion and how she analyzed the opinion of any other expert. Because

there is no discernable difference, it appears Garcia's claim is focused not on an improper or erroneous method of making a determination but rather the application of a sound method that produced an outcome with which she disagrees. Accordingly, the Court finds that Garcia's allegation of error amounts to a disagreement with the ALJ's judgment in how she weighed the evidence, which the Court may not disturb. *See Bowman*, 511 F.3d at 1272 ("[W]e neither reweigh the evidence nor substitute our judgment for that of the agency.") (quotation omitted).

Garcia also highlights that she reported she had explosive behavior towards customers in one of her waitressing jobs, but the owner of the restaurant tolerated her behavior because he was a friend. (Doc 16 at 9.) Garcia contends that constitutes work done under special conditions, thus demonstrating she does not have the ability to do substantial gainful activity and that the ALJ erred in her evaluating of Dr. Owens's opinion. (*Id.* (quoting 20 C.F.R. § 404.1573(b) ("If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given to other people doing similar work, this may show that you are not working at the substantial gainful activity level.")).) However, performing work under special conditions does not necessarily determine whether a claimant is able to work at the substantial gainful activity level. *See* C.F.R. 404.1573(c) ("[W]ork done under special conditions *may* show that you have the necessary skills and ability to work at the substantial gainful activity level.") (emphasis added). In *Hicks v. Chater*, for example, the Tenth Circuit found an ALJ properly determined that the claimant's limitation did not prevent him "from performing the entry grade level tasks involved in his past relevant work, including his work assembling toys in the sheltered workshop . . . ." 99 F.3d 1149, at *3 (10th Cir. 1996) (quoting 20 C.F.R. § 404.1573(c)).

The ALJ noted that Garcia was terminated from one of her waitressing jobs because the restaurant closed and resigned from the other because she did not want to be paid under the table.

(AR at 23.) Additionally, the ALJ noted that she was terminated from her most recent employment for failing to obtain a required CPR certificate. (AR at 30.) In other words, the ALJ noted that, her mental and physical impairments notwithstanding, the record demonstrates that Garcia was able to perform work at the designated RFC and was not terminated as a result of her impairments. Relatedly, contrary to Garcia's assertion (Doc. 16 at 10), the Court finds that the ALJ was not disingenuous for discussing Garcia's past jobs in determining she had no past relevant work. *See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008) ("The ALJ found that Mr. Cowan previously worked with these impairments, which suggests these conditions would not currently prevent work.") (quotations omitted). Accordingly, the Court finds that the ALJ's determination that Dr. Owens's opinion supports only moderate limitations is supported by substantial evidence.

### V.     Conclusion

The Court concludes that the ALJ did not err in evaluating Dr. Owen's opinion and determining that it supported a finding of only moderate limitations. As a result, the Court finds that substantial evidence does support the ALJ's decision and that the Commissioner's final decision will be affirmed.

**IT IS THEREFORE ORDERED** that Garcia's Motion to Reverse and Remand (Doc. 16) is **DENIED** as outlined in this Order.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE